UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

UNITED STATES OF AMERICA )
)
v. )
) NO. 2:06-CR-05
MICHAEL CHARLES GUNTER )

**MEMORANDUM OPINION AND O R D E R**

After this Court became aware of a possible conflict of interest presented by attorney Herbert Moncier's simultaneous representation of Michael Charles Gunter in case No. 2:06-CR-05 and his representation of Gunter's co-defendant Michael Vassar in case No. 2:05-CR-75, this Court ordered a hearing which was conducted on March 17, 2006. After a careful review by this Court, this Court concludes that Mr. Moncier's simultaneous representation of multiple defendants under the facts and circumstances of this case demonstrates a significant potential conflict of interest on the part of Mr. Moncier. In an attempt to cure this significant potential for conflict of interest, Mr. Moncier has attempted to limit his representation of Gunter to "preparation for and trial" and has offered waivers of conflict of interest[1] from each of his clients. Because

[1] These waivers were ordered by this Court to be filed under seal; however, it is doubtful that the waivers are privileged. Out of an abundance of caution, however, the content of the waivers will remain sealed except to the extent quoted from herein.

this Court has concluded that Mr. Moncier's conflict, even in the face of his clients' waivers thereof, poses a significant risk of inadequate representation of Mr. Gunter and jeopardizes his right to a fair trial, Mr. Moncier will be disqualified from further representation of Mr. Gunter in this case.

***Background:***

On September 13, 2005, the federal grand jury indicted Dewey Lynn Phillips, James Mark Thornton and Michael Carl Vassar in case No. 2:05-CR-75 for conspiring to distribute and possession with the intent to distribute five (5) kilograms or more of cocaine and other substantive counts. The Federal Defender Services of East Tennessee was appointed to represent the defendant Vassar. On September 27, 2005, Federal Defender Services was permitted to withdraw as attorney for Vassar because a conflict of interest had arisen and substitute counsel was appointed. On October 4, 2005, Mr. Moncier, "having been retained by the family of defendant, Michael Vassar" moved the Court for the entry of an order substituting him as counsel for Vassar in the case. An order granting the motion was entered on October 5, 2005.

Mr. Moncier and the government have engaged in substantial and contentious motion practice in the case since that time.[2] On February 14, 2006, a superceding

---

[2] As of March 20, 2006, the docket sheet in case No. 2:05-CR-75 reflects 271 entries.

indictment was returned by the federal grand jury[3] in case No. 2:05-CR-75 adding Michael Charles Gunter as a co-defendant and alleged co-conspirator. Attorneys C. Phillip Owens and Thomas V. Testerman have appeared as counsel for Gunter in the case. That case is currently scheduled for trial on June 6, 2006.

On January 27, 2006, a criminal complaint was filed in this Court charging Bill Banks and Mike Gunter with possession with the intent to distribute 500 grams or more of cocaine. [Doc. 1]. On January 30, 2006, attorney Thomas V. Testerman appeared for the defendant Mike Gunter. On February 14, 2006, the federal grand jury returned a two count indictment restating the possession charge set forth in the criminal complaint and also charging Bill Wayne Banks, Michael Charles Gunter, Kenny Zane Holt and John Curtis Banks with a conspiracy to distribute and possess with the intent to distribute five (5) kilograms or more of cocaine [Doc. 21].[4] On March 3, 2006, attorney Moncier entered his appearance as counsel for Michael Charles Gunter "for the purpose of preparation for and the trial of this case." [Doc. 54]. In the notice of appearance, Mr. Moncier provided notice to the Court and the government that he also represents Harold Grooms who is mentioned in a search warrant affidavit as an associate of Gunter "in the cocaine business." The notice filed on March 3, 2006 further provided:

---

[3] The indictment in case No. 2:05-CR-75 alleges a conspiracy beginning on or about January 1, 2004 and continuing through on or about August 24, 2005.

[4] This indictment alleges a conspiracy beginning on or about November 15, 2005 and continuing to on or about January 26, 2006.

> Thomas Testerman remains counsel for Michael Charles Gunter to provide Michael Charles Gunter advice and representation on issues of F.R.Cr. P. 11 or FSSG 5K1.1 (sic) and the government is provided notice that any F.R.Cr.P. 11 or FSSG 5K1.1 (sic) offers, negotiations or discussions are to be made directly to Thomas Testerman on behalf of Michael Charles Gunter and same are not to the undersigned counsel. (sic)

Noting the obvious potential conflict of interest raised by Mr. Moncier's simultaneous representation of Vassar, Gunter and Grooms, the Magistrate Judge, quite properly fulfilling the Court's responsibility for determining that there is no conflict of interest that would jeopardize Gunter's Sixth Amendment right to an attorney free of any actual or potential conflict of interest, set a hearing for March 14, 2006 to inquire into the potential conflict of interest presented by Mr. Moncier's representation of Gunter. [Doc. 62]. On March 8, 2006, Mr. Moncier, on behalf of Gunter, filed a "petition for certiorari, objection and appeal from the order of the Magistrate-Judge." [Doc. 63]. This Court then notified the parties that it would conduct its own inquiry into the possible conflict of interest at the hearing on March 17, 2006.

***Applicable Law:***

The Sixth Amendment to the Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."[5] The United States Supreme Court has held that the Sixth Amendment

---

[5] Spelling in the original document.

secures the right to the assistance of counsel, by appointment if necessary, in a trial for any serious crime. *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L.Ed. 2d 799 (1963). While the right to select and be represented by one's preferred counsel is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather to ensure that a defendant will inexorably be represented by a lawyer whom he preferred. *Wheat v. United States*, 486 U.S. 153, 159, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988). The Sixth Amendment prohibits a court from unreasonably denying a defendant his counsel of choice, *United States v. Treadway*, 328 F. 3d 878 (6th Cir. 2003); however, the right to choose one's own counsel is not an absolute right because it is tempered by considerations of "prompt and efficient administration of justice" *Id; Wilson v. Mintzes*, 761 F. 2d 275, 280 (6th Cir. 1985). The Supreme Court has held that even though there exists a presumption in favor of a defendant's chosen counsel, the presumption may be overcome not only by a demonstration of actual conflict of interest on the part of defendant's chosen counsel but a showing of serious potential for conflict. *Wheat*, 486 U.S. at 164.

A court confronted with and alerted to possible conflicts of interest must take adequate steps to ascertain whether the conflicts warrant separate counsel. *Wheat*, 486 U.S. at 160. See also *Cuyler v. Sullivan*, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980). Thus, the trial court has a duty to intervene to protect a defendant from the consequences of a conflict of interest in defense counsel's representation of others, either

in the same trial or otherwise. *See United States v. Hall*, 200 F. 3d 962 (6th Cir. 2000). The district court has wide latitude regarding disqualification of counsel based upon conflict of interest. *Serra v. Michigan Department of Corrections*, 4 F. 3d 1348 (6th Cir. 1993), *cert. denied*, 510 U.S. 1201, 114 S. Ct. 1317, 127 L. Ed. 2d 666 (1994), (*citing Wheat v. United States*, 486 U.S. 153, 162-164). When resolving the question raised by a potential conflict of interest, this Court must balance the constitutional right of the defendant to representation by counsel of his choosing with the Court's interest in the integrity of the proceedings and the public's interest in the proper administration of justice. *United States v. Mays*, 69 F. 3d 116 (6th Cir. 1995).

A defendant may be able to waive his right to conflict free representation, *United States v. Reese*, 659 F. 2d 803 (6th Cir. 1983); however, a district court, in certain situations, can, in its discretion, disqualify an attorney despite a defendant's voluntary, knowing and intelligent waiver of his constitutional right to conflict free counsel after a hearing. *Serra*, 4 F. 3d at 1353. In fact, the district court has substantial latitude in refusing waivers of conflicts of interest, not only in those rare cases where an actual conflict may be demonstrated before trial, but also in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses. *Wheat*, 486 U.S. at 163.

***Analysis:***

It is quite clear to this Court that the information before the Court in this case establishes that Mr. Moncier has an obvious conflict in representing Gunter in one cocaine trafficking conspiracy case while representing Gunter's co-defendant in another cocaine trafficking conspiracy case which, if not related factually, are clearly related temporally. Mr. Moncier's conflict is even more obvious in representing Gunter in case No. 2:06-CR-05 where he is also representing another person, Harold Grooms, which the court's records show is involved in that conspiracy and is an alleged unindicted co-conspirator associated "in the cocaine business" with Gunter. The Rules of Professional Conduct as adopted by the Tennessee Supreme Court[6] provide that "[a] lawyer shall not represent a client if the representation of that client will be directly adverse to another client . . ." and ". . . shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client . . ." Rule 8, RPC 1.7, Rules of the Supreme Court of the State of Tennessee.

As indicated in the commentary to the Rules of Professional Conduct, loyalty is an essential element in the lawyer's representation of a client and a lawyer ordinarily may not act as an advocate against a person the lawyer represents in some other matter, even if it is wholly unrelated. Very importantly, the commentary provides that "loyalty to a client

---

[6] The Rules of Professional Conduct adopted by the Tennessee Supreme Court have been adopted as the rules of professional conduct insofar as they relate to matters within the jurisdiction of this Court. *See E.D. TN. LR 83.6*.

is also impaired when a lawyer cannot consider, recommend, or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests." As the United States Supreme Court has observed, ". . . a possible conflict of interest inheres in almost every instance of multiple representation . . ." *Cuyler v. Sullivan*, 446 U.S. 335 (1980). The obvious problem with such a conflict is that counsel's duties of loyalty and confidentiality to one defendant may keep counsel from doing what is necessary or desirable to protect the interest of the other defendant. In other words, joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing. Several examples will serve to make the point and all are applicable to this case. Joint representation may well preclude defense counsel from exploring plea negotiations and the possibility of an agreement to testify for the prosecution, or from challenging the admission of evidence prejudicial to one client but favorable to another, or from arguing at the sentencing hearing the relative involvement and culpability of respective clients, in order to minimize the culpability of one by emphasizing the culpability of another. *See generally Holloway v. Arkansas*, 435 U.S. 475, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978).[7]

---

[7] Although Mr. Moncier has represented to the Court that he has not, at this time, discussed with Gunter the "specifics of the cases", Mr. Moncier's actions to date in the case clearly illustrate his divided loyalties. For instance, Mr. Moncier has attempted to use case No. 2:06-CR-05 as a forum to require the United States to disclose its prosecutorial intentions as to Harold Grooms, an unindicted client of Mr. Moncier. Mr. Moncier subpoenaed three Assistant United States Attorneys in an attempt to force the government to state whether the government intends to supersede the indictment to add Grooms as a defendant, why the government waited until after Gunter chose his attorney to supersede the indictment to add Grooms, when the government intends to supersede the indictment to add Grooms and whether, if the government does supersede the indictment to add Grooms as a

Mr. Moncier and his clients seek to cure the significant potential conflict of interest which results from his multiple and simultaneous representation of these defendants by entering into an agreement with each providing for limited representation and waiver of conflicts of interest. As noted above, a defendant may, under certain circumstances, voluntarily, knowingly and intelligently waive his constitutional right to conflict free counsel at a hearing. During the hearing on March 17, 2006, this Court specifically inquired of the defendant Gunter as to whether his waiver was voluntary, knowing and

---

defendant, the government intends to seek a joint trial of Gunter and Grooms. Although Mr. Moncier argues that such information is necessary to the resolution of questions relating to Gunter's defense, this Court is not persuaded that such is the case. Clearly the information sought is an effort to provide assistance to Grooms while providing very little or no benefit to Gunter.

In addition, certain conflict of interest waivers were filed with this Court under seal during the *in camera* hearing held on March 17, 2006. The "limited representation" agreement and the addendum thereto entered into between Mr. Moncier and Gunter contains the following provisions:

> 15. No relationship established between attorney and client pursuant to this limited employment shall be considered by any court to prohibit Mr. Moncier to represent any other person at any time on any charge including Mr. Moncier representing the other clients named and <u>specifically Harold Grooms</u>. (emphasis added)
>
> 16. In the event Harold Grooms is added and charged in case 02:06-cr-5 for trial jointly with Client and Client or Harold Grooms are unsuccessful in obtaining a severance for separate trials in case 02:06-cr-5, Attorney and Client shall agree and enter an Order substituting separate counsel at a joint trial for Client; Attorney shall represent Harold Grooms in any joint trial with Harold Grooms in case 02:06-cr-5; and fees paid by Client shall be refunded according to the percentages provided for in the Employment Agreement entered into on March 3, 2006.

Thus, it appears that Mr. Moncier has attempted to structure his representation with Gunter in such a fashion that he would not be precluded, under any circumstances, from representing Grooms. Such a provision makes it quite clear to this Court that Mr. Moncier's undivided loyalty belongs to Grooms to the possible detriment of Gunter.

intelligent. Although this Court has some concern about whether or not Gunter's waiver was in fact voluntary, knowing and intelligent[8], this Court need not decide that issue specifically and, for the purpose of the order, will assume that it was. As the United States Supreme Court observed in *Wheat,* however, "although a defendant may waive his or her counsel's conflict of interest, such waiver does not necessarily cure the problems indicative to conflicts of interest." *Wheat*, 486 U.S. at 160. In fact, the Court has an institutional interest in protecting the truth seeking function of the proceedings over which it is presiding by considering whether the defendant has effective assistance of counsel, regardless of any proffered waiver. *Reese, supra*; *United States v. Muscony,* 927 F. 2d 742 (3rd Cir. 1991).

The Tennessee Rules of Professional Conduct clearly anticipate that a client may consent to representation by a lawyer with a conflict of interest provided that the "client consents in writing after consultation." The commentary to the Rules of Professional Conduct also indicates that, while the writing need not take any particular form, it should include disclosure of the relevant circumstances and reasonably foreseeable risks of the conflict of interest, as well as the memorialization of the client's agreement to the representation despite such risks. A careful review by this Court of the waiver executed

---

[8] During the Court's questioning of Gunter at the *in camera* hearing on March 17, 2006, Gunter was often hesitant and appeared uncertain in many of his answers to the Court. At one point, the Court specifically inquired of Gunter as to the reason for his hesitation. Mr. Gunter's reply was that he was trying to understand the Court's questions.

by Gunter discloses that it does not set forth a recitation of the reasonably foreseeable risks of Mr. Moncier's conflict of interest. Without such, the agreement cannot in fact memorialize the client's agreement to the representation despite those risks. Most troubling to this Court, however, is that the waiver executed by Gunter includes not only a waiver of conflict of interest but also a waiver of the attorney client privilege and permits Mr. Moncier to cross-examine Gunter, in the event he should ever enter into a cooperation agreement with the government and testify against one or both of Mr. Moncier's other clients, to use whatever information he has obtained from his representation of Gunter to cross-examine Gunter at that trial.

Waivers have been declined where a criminal defense attorney may be called upon to cross-examine another present or former client at trial. *See Muscony*, 927 F. 2d at 749. This Court specifically finds that the Court's institutional interest in preserving the integrity and truth seeking process of the Court and the need to engender respect for the Court in general require this Court to disqualify Mr. Moncier despite the attempted waiver by Gunter. Critical to this Court's decision is the need for this Court to protect the candor that must exist between client and attorney. This agreement places Gunter in the untenable position of having to potentially withhold critical information from his defense attorney or otherwise run the risk of having that very information used to cross-examine him should he later testify against one of Mr. Moncier's other clients at trial.

This agreement undeniably jeopardizes Gunter's right to a fair trial and inescapably presents a question of divided loyalty for Mr. Moncier. And, while Gunter assured this Court that he has no plans to enter into any sort of plea agreement with the government which would require him to testify against either of Mr. Moncier's other clients, this Court is well aware that such circumstances cannot be predicted with any degree of certainty.[9]

This Court does not lightly deny a criminal defendant the right to counsel of his choosing; however, this is one of those rare cases where the need to promote attorney-client candor, maintain respect for the Court and ethical rules of the legal profession , and assure a fairly rendered verdict free from post-trial attack on appeal requires this Court's decision.

---

[9] The United States Supreme Court recognized just how quickly the direction of the wind may change in representation of multiple criminal defendants in its opinion in *Wheat*. Chief Justice Rehnquist, writing for the majority said:

> Unfortunately for all concerned, a district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly. The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, *163 even for those thoroughly familiar with criminal trials. It is a rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand. A few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants. These imponderables are difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics. Nor is it amiss to observe that the willingness of an attorney to obtain such waivers from his clients may bear an inverse relation to the care with which he conveys all the necessary information to them.

*Wheat*, 486 U.S. at 162-163

Mr. Moncier is **DISQUALIFIED** from further representation of the defendant, Michael Charles Gunter.

Defendant's "petition for certiorari, objection, and appeal from the order of the Magistrate-Judge" [Doc. 65] is **DENIED AS MOOT**.

SO ORDERED.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE